Scott A. Brown, SBN 177099
BROWN | POORE LLP
3100 Oak Drive, Suite 100
Walnut Creek, California 94597
Telephone: (925) 943-1166
sbrown@bplegalgroup.com

Attorneys for Plaintiffs
SHARI SEHLHORST,
DAN SEHLHORST

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARI SEHLHORST, DAN SEHLHORST<br><br>Plaintiffs,<br><br>v.<br><br>SEA WORLD PARKS & ENTERTAINMENT, INC.; SEA WORLD, LLC dba SEA WORLD SAN DIEGO or dba AQUATICA SAN DIEGO; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. '21CV1670 BEN WVG<br><br>**COMPLAINT FOR DAMAGES, EQUITABLE AND/OR INJUNCTIVE RELIEF**<br><br>VIOLATIONS OF THE FAIR LABOR STANDARDS ACT ("FLSA"), 29 U.S.C. SECTION 215;<br>UNPAID OVERTIME WAGES (LAB. CODE SECTIONS 510, 1194);<br>UNPAID MEAL PERIOD WAGES (I.W.C. WAGE ORDER NO. 4, LAB. CODE SECTIONS 226.7, 512)<br>WAITING TIME PENALTIES (LAB. CODE SECTIONS 201, 202, 203);<br>ITEMIZED WAGE STATEMENT VIOLATIONS (LAB. CODE SECTION 226);<br>VIOLATIONS OF CALIFORNIA LABOR CODE SECTION 1102.5;<br>VIOLATIONS OF THE CALIFORNIA FAIR EMPLOYMENT & HOUSING ACT, GOVERNMENT CODE SECTION 12940 ET SEQ;<br>VIOLATION OF CALIFORNIA LABOR CODE SECTION 6310;<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs SHARI SEHLHORST and DAN SEHLHORST complain and allege as follows:

## PARTIES AND JURISDICTION

1. Plaintiff SHARI SEHLHORST ("Shari") is, and at all relevant times hereto, has been a resident of the State of California.

2. Plaintiff DAN SEHLHORST ("Dan") is, and at all relevant times hereto, has been a resident of the State of California. Shari and Daniel are married and were both employed by Defendants.

3. Defendant SEA WORLD PARKS & ENTERTAINMENT is a Delaware corporation that is authorized to do business within this judicial district, and at all relevant times herein, employed more than five (5) employees within the County of San Diego, including Plaintiffs.

4. Defendant SEA WORLD LLC DBA SEA WORLD SAN DIEGO or DBA AQUATICA SAN DIEGO is a Delaware limited liability company, and referred collectively with Defendant SEA WORLD PARKS & ENTERTAINMENT as "DEFENDANT" or "SEAWORLD."

5. This Court has jurisdiction and venue over this action in that Defendant SeaWorld employed both Plaintiffs within this judicial district in the State of California, and Plaintiff Shari Sehlhorst is seeking relief under federal law, including the Fair Labor Standards Act, 29 U.S.C. Sections 215 et seq. Diversity of citizenship exists and the amount of controversy exceeds $75,000, pursuant to 28 U.S.C. section 1332. This Court has supplemental jurisdiction over any state law claims, in that they arose from the same common nucleus of operative facts as the federal claims.

6. Shari has exhausted all administrative remedies prior to filing this action, including obtaining a Right to Sue Notice from the California Department of Fair Employment and Housing.

7. Unless otherwise indicated as acting in individual capacity, Plaintiffs are informed and believe, and thereby allege that each of the defendants herein were at all times relevant

-2-
COMPLAINT FOR DAMAGES, EQUITABLE, AND/OR INJUNCTIVE RELIEF
SEHLHORST V. SEAWORLD PARKS & ENTERTAINMENT, INC. ET AL

hereto, the agents, representatives, servants and employees of the remaining defendants, and was acting at least in part within the course and scope of such relationship, and that the wrongful acts alleged herein were committed by such defendants, and each of them. Further, plaintiff is informed and believes that defendants were, at all relevant times, one integrated or joint enterprise and/or employer.

8. Plaintiffs do not know the true names and capacities of Defendants sued herein as DOES 1 through 10, and therefore sues these defendants by fictitious names. Plaintiffs will amend this complaint to state the true names and capacities when ascertained. Plaintiffs are informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences and damages alleged herein, and that plaintiffs' damages as hereinafter set forth were proximately caused by said defendants.

## FACTUAL BACKGROUND

### A. PLAINTIFF SHARI SEHLHORST

9. SeaWorld is an amusement park company that operates multiple parks across the United States, including three marine animal parks in San Diego, Orlando, and San Antonio. It features live performances and received compensation for merchandise it sells across state lines and throughout the world featuring its marine animals. SeaWorld has been an SEC-reporting company since April 2013, and its shares are listed on the NYSE (ticker symbol: SEAS).

10. Plaintiff Shari Sehlhorst is a 61-year-old woman who spent almost 45 years working for SeaWorld in San Diego. She started as an admission and ride attendant on March 27, 1976. Shari held a variety of jobs over the next 20 years, before moving into the Environmental, Health & Safety Department in 1997. Although she was called an "Environmental Leader", she had no crew and supervised no employees. Over the last 8 years of Shari's employment, her primary responsibilities included conducting inspections throughout the park, collecting water samples from the park and from Mission Bay, ordering supplies, tracking department expenses, preparing hazardous waste for shipping, entering data into spreadsheets, and preparing reports to obtain or renew permits, and ensure compliance with government agencies. From March 2020

through the date of her termination, Shari also swept pathways/drains, cleared brush, and bussed tables.

11. Shari regularly worked more than 40 hours in a workweek without receiving proper overtime compensation. During these weeks, SeaWorld did not provide Shari with overtime compensation at a rate of one and one-half times her regular rate of pay for all hours worked over 40 during those workweeks. Rather than pay Shari overtime for all hours worked over 40 in a given workweek, SeaWorld misclassified her as exempt from overtime pay, and did not compensate her for overtime hours worked. Further, Shari did not receive uninterrupted lunch or rest breaks during her shifts. She worked 6-7 days per week and averaged between 10-14 hours per day.

12. Shari worked, on average, approximately 32 hours of overtime each week. Shari was not required to keep timesheets. Defendant failed to maintain and keep time records for Shari. Defendant knew Shari worked overtime without proper compensation, and it willfully failed and refused to pay her overtime wages at the required rates.

13. On September 25, 2020, at the park, Shari was helping another employee lift a 100 pound "autosampler" which contained 24 one-liter bottles of water, when she felt a sharp pop in her neck. Pain radiated through her shoulders. Shari sought medical attention and was diagnosed with strained muscles and tendons in her neck and back as well as spondylosis of the cervical region, an aged related disease of the spinal disks in her neck. An injury report was submitted to SeaWorld's safety manager at the San Diego park. Shari was placed on modified duty with lifting, pushing or pulling limited to 10 pounds.

14. Shari began occupational therapy at Concentra Occupational Medical Center in San Diego on October 2, 2020 and continued throughout the month. Concentra is a third-party administrator hired by SeaWorld to monitor employee's medical conditions and treatment. Her progress reports were forwarded to Defendant.

15. On October 7, 2020, Shari visited Concentra Medical Center for occupational therapy as directed.

16. On October 7, 2020, at approximately 8:00 am, Shari discovered that a storm discharge drain was at the center of a cleaning project near Cirque stadium. A storm water drain is recognized as a "direct" discharge drain which is designed to collect rain water only and discharge it directly into Mission Bay. Shari understood this was one of many storm water ordinances imposed by the State Water Resource Control Board, and other county and state water boards, that required SeaWorld's compliance. Accordingly, Shari warned her co-workers and supervisors that it was necessary to prevent discharge when they wash the pathway by (a) conducting an initial dry sweep and/or (b) surrounding the drain with an impermeable matt and collecting any excess water by shop vacuum.

17. When Shari returned a few hours later, she discovered that the storm drain area had been hosed down without precautions and her warnings had been ignored. Therefore, Shari photographed the area and complained to supervisors, Mel Sells, Vice President Park Operations, Dirk Allie, Director of Environmental Health and Safety, Nissa Susalla, Manager of Park Operations and Robert Carrillo, a supervisor in Park Operations, that her warnings had been ignored. Shari emphasized that SeaWorld had received a citation in the past for violations of the storm water ordinance.

18. On October 9, 2020, Shari visited Concentra Medical Center for occupational therapy as directed.

19. On October 10, 2020, Shari visited Concentra Medical Center for occupational therapy as directed.

20. On October 12, 2020, Shari visited Concentra Medical Center for occupational therapy as directed.

21. On October 14, 2020, Shari visited Concentra Medical Center for occupational therapy as directed.

22. On October 15, 2020, after Shari finished collecting water samples in Mission Bay, she was summoned to a meeting with Vice-President, Melanie Sells. When Shari arrived,

she was greeted by Ms. Sells as well as Katie Domes from Human Resources, who informed Shari that she was terminated due to "restructuring."

23. Defendant's reason for Shari's termination was untrue and pretextual given that Shari's position is essential to ensuring compliance with the numerous permit environmental requirements imposed on SeaWorld by government agencies.

24. On November 20, 2020, Defendant replaced Shari with a new employee in her mid-20s for approximately $23/hour. Two months later, this employee left SeaWorld's employment.

### B. PLAINTIFF DAN SEHLHORST

25. Dan started his employment with Defendant on or about April 1, 2018 as the Director of Design & Engineering. Approximately six months later, he was reclassified as a Project Manager. He performed his duties with skill and provided significant value to Defendant.

26. On or about March 31, 2020, Defendant informed Dan that his position was furloughed due to Covid pandemic related reasons.

27. On January 22, 2021, Dan's supervisor, Darlene Walter, asked whether he was interested in returning to SeaWorld. Dan agreed and they discussed potential projects. Ms. Walker stated that she would initiate the approval process with Human Resources.

28. On February 7, 2021, Dan inquired with Ms. Walker about the status of a position. Ms. Walter replied that she was waiting for approval for a position for Dan.

29. On February 18, 2021, Shari Sehlhorst filed a complaint against Defendant with the Equal Employment Opportunity Commission for discriminatory practices she suffered during her employment.

30. During the next few weeks, Dan discovered several positions available at SeaWorld including his previous Project Manager position.

31. On March 24, 2021, Dan notified Ms. Walter of this position and inquired about his hiring status. Dan inquired with several other SeaWorld managers about positions at SeaWorld over the next few weeks.

32. On April 12, 2021, Dan was advised that he would need to submit another application to be considered for a position. Dan immediately applied through the SeaWorld jobs website. Over the next few months, Dan continued to search for positions for which he was qualified, and applied for a Project Manager position.

33. On June 5, 2021, Dan was informed that he was not being considered for the Project Manager position even though he was qualified for it and performed the same position. On June 24, 2021, Dan discovered that SeaWorld's career site reposted the same Project Manager position.

34. On July 1, 2021, Defendant informed Dan that his status remained "furloughed."

## PLAINTIFF SHARI SEHLHORST'S CLAIMS

## FIRST CAUSE OF ACTION

(Violations of the FLSA, 29 U.S.C. Section 201, et. al.)

35. Plaintiff realleges and incorporates by reference the previous paragraphs of this Complaint as though fully set forth herein.

36. The Fair Labor Standards Act requires covered employers to pay non-exempt employees no less than one-and-one-half times their regular rate of pay for all hours worked in excess of forty in a workweek. 29 U.S.C. section 207.

37. Defendant SeaWorld is an "enterprise" as defined by the FLSA, 29 U.S.C. section 203(r)(l), and is engaged in commerce within the meaning of the FLSA, section 203(b), (s)(1).

38. Shari is a non-exempt covered employee. 29 U.S.C. section 203(e)(1).

39. Shari has worked more than 40 hours per week for Defendant during the applicable time period.

40. Defendant has not properly compensated Shari for her overtime hours as required by the FLSA.

41. Defendant failed to make a good-faith effort to comply with the FLSA as it related to the compensation of Shari. Defendant knew Shari worked overtime without proper compensation, and it willfully failed and refused to pay Plaintiff her wages at the required

overtime rates. Defendant's willful failure and refusal to pay Shari wages for time worked violated the FLSA. 29 U.S.C. section 207.

42. By failing to record, report, and/or preserve records of hours worked by Shari, Defendant failed to make, keep, and preserve records sufficient to determine Shari's wages, hours, and other conditions of employment, in violation of the FLSA.

43. The foregoing conduct constitutes a willful violation of the FLSA.

44. As a direct and proximate result of Defendant's unlawful conduct, Shari has suffered and will continue to suffer a loss of income and other damages. Shari is entitled to liquidated damages and attorneys' fees and cost incurred in connection with this claim.

## SECOND CAUSE OF ACTION

(Unpaid Overtime Wages – Labor Code sections 510, 1194)

45. Plaintiff realleges and incorporates by reference the previous paragraphs of this Complaint as though fully set forth herein.

46. The laws of the State of California require an employer, such as Defendant, to pay overtime compensation to all employees, unless they are made exempt from the overtime pay requirements by the Legislature or the IWC. Shari has not qualified for any exemption at any time relevant to this action. Therefore, Shari has all times relevant to this action been entitled to be paid overtime compensation for all overtime hours worked.

47. During Shari's employment with Defendants, Shari worked in excess of 8 hours in a workday, 12 hours in a workday, 40 hours in a workweek, seven days of a workweek, and in excess of 8 hours on the seventh day of a workweek.

48. Defendant have misclassified Shari as being exempt from the overtime pay entitlement under California law, and has failed and refused to pay her overtime compensation for her overtime hours worked as and in the manner required by California law.

49. As a direct and proximate result of Defendant's unlawful conduct, as set forth herein, Shari has sustained damaged, including loss of earnings for hours of overtime worked on

behalf of Defendant, in an amount to be established at trial, and is entitled to recover these damages, as well as interest, costs, and reasonable attorney's fees and costs, pursuant to statute.

### THIRD CAUSE OF ACTION

(Unpaid Meal Period Wages – IWC Wage Order No. 4,

Labor Code sections 218.5, 218.6, 226.7, 512)

50. Plaintiff realleges and incorporates by reference the previous paragraphs of this Complaint as though fully set forth herein.

51. Shari regularly worked in excess of 5 hours in a workday without being provided with a meal period of at least thirty minutes during which she was relieved of all duty, as required by Labor Code sections 226.7 and 512, and IWC Wage Order No. 4, section 11.  When an employer fails to provide such a meal period, the employer is required to pay the employee as wages one additional hour of pay at the employee's regular rate of compensation.  Defendant failed to pay this additional meal period compensation to Shari.

52. As a direct and proximate result of Defendant's conduct, Plaintiff has sustained damages, including loss of earnings from unpaid meal periods, in an amount to be established at trial, and is entitled to recover these damages, as well as interest, costs, and reasonable attorney's fees and costs, pursuant to statute.

### FOURTH CAUSE OF ACTION

(Waiting Time Penalties – Labor Code sections 201, 202, 203)

53. Plaintiff realleges and incorporates by reference the previous paragraphs of this Complaint as though fully set forth herein.

54. Labor Code sections 201 and 202 require employers to pay their employees all wages due immediately upon discharge, or within 72 hours of quitting without notice.  Labor Code section 203 provides that where an employer willfully fails to make such timely payment, the employer must, as a penalty, continue to pay the employees' wages until the back wages are paid in full or an action is commenced, up to a maximum of 30 days' wages.

55. Shari has separated from employment with Defendants without being paid the overtime and meal period wages that are due within the time required by Labor Code sections 201 and 202. Defendant's failure to pay these wages has been and continues to be willful.

56. As a result of Defendant's conduct, Shari is entitled to waiting time penalties in the amount of 30 days' wages under Labor Code section 203, together with interest thereon and reasonable attorney's fees and costs.

## FIFTH CAUSE OF ACTION

(Itemized Wage Statement Violations – Labor Code section 226)

57. Plaintiff realleges and incorporates by reference the previous paragraphs of this Complaint as though fully set forth herein.

58. Under Labor Code section 226(a), Defendant has at all relevant times been required to provide Shari with regular itemized written statements showing, among other things, total hours worked, all applicable hourly rates during the pay period, and the corresponding number of hours worked at each rate by the employee. Defendant knowingly and intentionally failed to provide timely, accurate itemized wage statements including this required information.

59. Under Labor Code section 226(e), an employee suffering injury as a result of a knowing and intentional failure by an employee to comply with section 226(a) is entitled to recover the greater of all actual damages or $50 for the initial pay period in which a violation occurs and $100 for each violation in a subsequent pay period, up to a maximum amount of $4,000.

60. As a direct and proximate result of Defendant's conduct, Shari has been injured, by among other things, not being paid all wages due, not knowing how many hours she worked and at what rate(s), and being required to file this action to recover her wages and determine the amount of hours worked and wages due. Shari is entitled to recover the damages or penalties provided by Labor Code section 226(e), including interest thereon, and costs and reasonable attorney's fees and costs.

## SIXTH CAUSE OF ACTION

(Violation of California Labor Code Section 1102.5)

61. Plaintiff realleges and incorporates by reference the previous paragraphs of this Complaint as though fully set forth herein

62. California Government Code §1102.5, *et. seq* provide that it is an unlawful employment practice for an employer or any other person to retaliate against an employee for opposing illegal conduct, or making workplace complaints of illegal conduct as described above. The United States Environmental Protection Agency promulgated storm water regulations in compliance with section 402(p) of the Clean Water Act. (55 Fed. Reg. 47990, codified at 40 C.F.R. § 122.26).

63. In acting above, Defendant violated Section 1102.5, when it terminated Shari's employment, and took adverse actions against Shari, based upon her complaints pertaining to the direct discharge of storm drains in the San Diego park.

64. As a direct and proximate result of Defendant's retaliatory conduct, Shari has suffered loss of employment, indignity, great humiliation and emotional distress manifesting in physical symptoms.

65. Defendant's actions have caused and continue to cause Shari substantial losses in earnings, significant reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, future earnings and benefits, cost of suit, humiliation, embarrassment and anguish, all to their damage in an amount according to proof.

66. The acts of Defendant as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Shari and to cause Shari mental anguish, anxiety, and distress. Defendant's acts were done in conscious disregard of the risk of severe emotional harm to Shari and with the intent to injure Shari, constituting oppression, fraud, malice under California Civil Code §3294, entitling Shari to punitive damages.

## SEVENTH CAUSE OF ACTION

(Violations of the California Fair Employment & Housing Act – Age Discrimination)

(Government Code sections 12940 et. al.)

67. Plaintiff realleges and incorporates by reference the previous Paragraphs of this Complaint as though fully set forth herein.

68. The California Fair Employment and Housing Act ("FEHA") prohibits an employer from discriminating against an employee based upon age.

69. In acting above, Defendant violated FEHA when it terminated Shari's employment, took other adverse actions against Plaintiff.

70. As a direct and proximate result of Defendant's conduct, Shari has suffered loss of employment opportunities, indignity, great humiliation and emotional distress manifesting in physical symptoms.

71. Defendant's actions have caused and continue to cause Shari substantial losses in earnings, significant reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, future earnings and benefits, cost of suit, humiliation, embarrassment and anguish, all to their damage in an amount according to proof.

72. The acts of the Defendant as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Shari and to cause mental anguish, anxiety, and emotional distress. The acts of the employer Defendant were further committed by managing agents, officers, and/or directors of the Defendant, or ratified by the Defendant. The Defendant's acts were done in conscious disregard of the risk of severe emotional harm to Plaintiff and with the intent to injure Plaintiff, constituting oppression, fraud, malice under California Civil Code §3294, entitling Shari to punitive damages.

///
///
///
///

## EIGHTH CAUSE OF ACTION

(Violations of the California Fair Employment & Housing Act – Disability Discrimination)

(Government Code sections 12940 et. al.)

73. Plaintiff realleges and incorporates by reference the previous Paragraphs of this Complaint as though fully set forth herein.

74. The California Fair Employment and Housing Act ("FEHA") prohibits an employer from discriminating against an employee based upon disability.

75. In acting above, Defendant violated FEHA when it terminated Shari's employment, took other adverse actions against Plaintiff.

76. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered loss of employment opportunities, indignity, great humiliation and emotional distress manifesting in physical symptoms.

77. Defendant's actions have caused and continue to cause Shari substantial losses in earnings, significant reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, future earnings and benefits, cost of suit, humiliation, embarrassment and anguish, all to their damage in an amount according to proof.

78. The acts of the Defendant as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Shari and to cause mental anguish, anxiety, and emotional distress. The acts of the employer Defendant were further committed by managing agents, officers, and/or directors of the Defendant, or ratified by the Defendant. The Defendant's acts were done in conscious disregard of the risk of severe emotional harm to Plaintiff and with the intent to injure Shari, constituting oppression, fraud, malice under California Civil Code §3294, entitling Shari to punitive damages.

## NINTH CAUSE OF ACTION

(Violation of Labor Code section 6310)

79. Plaintiff incorporates herein by reference all the allegations contained in the previous paragraphs of this complaint as fully set forth herein.

80. Labor Code section 6310 prohibits an employer from discriminating against an employee who makes any oral or written complaint about unsafe work conditions or practices.

81. Shari complained to Defendant about direct discharge storm drains in the park which constituted unsafe work conditions and practices. The storm drains travelled directly to Mission Bay. They were designed to carry only rain water discharges only, and to be free from pollutants, spills, leakages, and dumping.

82. Shari's complaints and reports of hazardous working conditions were substantial motivating reasons for Defendant's decision to discharge Shari.

83. As a result of Defendant's conduct, Shari has suffered harm. Shari seeks all available relief and damages, in an amount to be proven at trial.

**PLAINTIFF DAN SEHLHORST'S CLAIMS**

**TENTH CAUSE OF ACTION**

(Violation of Labor Code section 1102.5(h))

84. Plaintiff incorporates herein by reference all the allegations contained in the previous paragraphs of this complaint as fully set forth herein.

85. Labor Code section 1102.5(h) provides that an employer, or a person acting on behalf of the employer, shall not retaliate against an employee because the employee is a family member of a person who has, or is perceived to have, engaged in any acts protected by this section.

86. As alleged above, Dan's wife, Shari Sehlhorst, complained to Defendant about direct discharge storm drains in the park polluting Mission Bay, which were unsafe work conditions and practices. Further, on February 18, 2021, Shari lodged a written complaint with the EEOC for discriminatory practices she saw and experienced at SeaWorld.

87. Shari's complaints and reports of hazardous working conditions and discriminatory practices at SeaWorld were substantial motivating reasons for Defendant's decision to refuse to rehire her husband, Dan, for available positions and for which he was qualified.

88. As a result of Defendant's conduct, Dan has suffered harm.  Dan seeks all available relief and damages, in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for judgment against Defendants, and each of them as follows:

1. For general damages in an amount according to proof;
2. For special damages in an amount according to proof;
3. For prejudgment interest in an amount according to proof;
4. For equitable, declaratory, and/or injunctive relief including reinstatement;
5. For statutory penalties and liquidated damages;
6. For reasonable attorney's fees and cost of suit therein pursuant to applicable provisions of law, including Labor Code sections 218.5, 226, 1102.5, 1194, and 2699, and  29 U.S.C. section 216(b), and Code of Civil Procedure section 1021.5;
7. For such other and further relief as the court may deem proper; and,
8. For punitive or exemplary damages;
9. **Plaintiffs demand a trial by jury.**

Dated:  September 22, 2021  BROWN | POORE LLP

By:   *//s// Scott A. Brown*
     Scott A. Brown
     Attorneys for Plaintiffs